**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**PATRICIA FORTUNE, FOR THE
BENEFIT OF HERSELF AND OTHERS
FOR THE WRONGFUL DEATH OF
DEVIN DANIEL FORTUNE**                                               **PLAINTIFF**

**VS.**                                  **Civil Action No. 2:12cv88-MTP**

**BILLY MCGEE, INDIVIDUALLY AND IN HIS
CAPACITY AS SHERIFF OF FORREST COUNTY,
MISSISSIPPI; FORREST COUNTY, MISSISSIPPI;
RANDALL SMITH, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS DEPUTY WITH THE
FORREST COUNTY SHERIFF'S DEPARTMENT;
AND SKYE JOHNSON, INDIVIDUALLY AND AS
REGISTERED NURSE FOR THE FORREST
COUNTY JAIL**                                    **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [35] filed by

Defendants Forrest County, Mississippi, Skye Johnson, Sheriff Billy McGee, and Deputy Sheriff

Randall Smith and on the Motion to Re-Open Discovery [47] filed by Plaintiff.  Having

reviewed the submissions of the parties and the applicable law, the Court finds that the

Defendants' Motion for Summary Judgment [35] should be granted and Plaintiff's Motion to Re-

Open Discovery [47] should be denied.

**FACTUAL BACKGROUND**

On August 3, 2009, Devin Daniel Fortune ("Fortune") was arrested and charged with

felony homicide. (Defs' Mo. Sum. J. Ex. A: Custody Report.)  Thereafter, Fortune was held at

the Forrest County Regional Jail ("the jail") as a pretrial detainee. (Complaint at 3.)  On March

28, 2011, Fortune submitted a request for medical care complaining of sinus problems, breathing

1

problems, a sore throat, and a fever. (Defs' Ex. M: Request for Medical Care.)

Later that day, Defendant Skye Johnson, R.N., the nurse on-duty and working at the jail, examined Fortune. (Defs' Ex. N: Deposition of Skye Johnson at 13.)  Nurse Johnson noted that Fortune had a temperature of 100.3 degrees, a pulse rate of 126, a respiration rate of 16, a blood pressure of 147 over 93, and an oxygen saturation of 89 percent. (Defs' Ex. M; Ex. N at 16.) Nurse Johnson examined Fortune's throat and noticed that his tonsils were swollen and had white patches. (Defs' Ex. N at 15.)  Nurse Johnson did not listen to Fortune's chest or chart any information regarding his lungs. (Defs' Ex. N at 15-16.)  Nurse Johnson called the medical doctor for the jail, Dr. Calvin Washington, and explained Fortune's symptoms. (Defs' Ex. N at 13.)  Dr. Washington prescribed an antibiotic, Amoxil, and an antihistamine, Claritin. (Defs' Ex. N at 16-17.)  Nurse Johnson did not see Fortune after March 28, 2011. (Ex. N at 18.)

Three days later, on March 31, 2011, Defendant Deputy Sheriff Randall Smith made rounds[1] on the floor where Fortune was housed. (Defs' Ex. O: Daily Shift Report.)  Deputy Smith performed a walk-through at 10:00 p.m. and spoke with Fortune. (Defs' Ex. O; Ex. P at 11-12.)  According to Deputy Smith, Fortune did not appear ill and was not in any apparent distress. (Defs' Ex. P at 11-12.)  At 12:45 a.m. on April 1, 2011, Deputy Smith performed another walk-through and was alerted by inmates that Fortune was in distress. (Defs' Ex. P at 12; Ex. Q: Incident Report.)  Fortune was grabbing his chest and stated, "I just can't breathe." (Defs' Ex. P at 12.)  Deputy Smith requested an ambulance and, with the assistance of another inmate, carried Fortune to the first floor. (Defs' Ex. P at 13-14; Ex. Q.)  At approximately 1:00 a.m., an

---

[1] Deputy Smith was not normally responsible for making rounds but was filling in for another officer on March 31 and April 1, 2011.  (Defs' Ex. P: Deposition of Randall Smith at 15-16.)

ambulance arrived and transported Fortune to Forrest General Hospital. (Ex. Q.)

When Fortune arrived at the hospital, he was in full cardiac arrest. (Defs' Ex. R: Forrest General Hospital Records.)  Hospital staff attempted resuscitation measures, but Fortune was pronounced dead at 1:50 a.m. (Defs' Ex. R.)  Later that day, Dr. Amy Gruszecki performed an autopsy of Fortune and determined that the cause of death was "[a]cute and chronic pneumonia" and determined the contributory cause of death was "[c]ardiomegaly with concentric left ventricular hypertrophy."[2] (Defs' Ex. S: Autopsy Report.)

Plaintiff commenced this wrongful death action on May 24, 2012, asserting claims under 42 U.S.C. § 1983 and asserting state law claims of negligence and intentional infliction and/or negligent infliction of mental and emotional distress and anguish. (Compl. at 3-5.)  Thereafter, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants assert that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied.  *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a

---

[2] This condition is the enlargement or overgrowth of the heart due to an increase in size of its constituent cells. Dorland's Illustrated Medical Dictionary 859 (29th ed. 2000).

question of law that this Court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id* at 712.

There, however, must be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations,"[3] unsubstantiated assertions,[4] or the presence of a "scintilla of evidence,"[5] is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

### Section 1983 Claims

Plaintiff's claims based on constitutional violations are before the Court pursuant to 42 U.S.C. § 1983. The constitutional rights of a convicted prisoner stem from the Eighth Amendment's prohibition on cruel and unusual punishment, while the analogous rights of a pretrial detainee arise under the due process guarantees of the Fourteenth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). The Fifth Circuit allows wrongful death

---

[3] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990)

[4] *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994)

[5] *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)

recovery under Section 1983. *Phillips v. Monroe County, MS*, 311 F.3d 369, 374 (5th Cir. 2002).


Section 1983, however, "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'right, privileges, or immunities secured by the Constitution and laws' of the United States." *Id*. (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

A Section 1983 action may be brought against a person in his individual capacity, a person in his official capacity, or against a governmental entity like Forrest County. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987).  The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

A defendant acting in his individual capacity may invoke the doctrine of qualified immunity to shield himself from liability. *Owen v. City of Independence, MO*, 445 U.S. 622 (1980).  The doctrine of qualified immunity, however, is not applicable to a governmental entity or a person acting in his official capacity. *Id*.  Defendants' Motion for Summary Judgment is couched in terms of qualified immunity, but Defendants also assert that Plaintiff's claims and proof are insufficient as a matter of law.  Therefore, the sufficiency of Plaintiff's Section 1983 claims and the issue of qualified immunity are before the Court.

***Denial of Adequate Medical Care***

Plaintiff alleges wrongful death claims against the Defendants for the denial and/or delay of adequate medical treatment for Fortune in violation of the Fourteenth Amendment. Specifically, Plaintiff claims Fortune was denied adequate medical treatment due to (1) Nurse Skye Johnson failure to properly treat Fortune's serious medical condition (pneumonia) when she only treated him for a fever and a sore throat; (2) Sheriff Billy McGee failure to establish

6

protocol or training procedures for inmate medical emergencies; and (3) Deputy Sheriff Randall Smith failure to check on Fortune with sufficient frequency.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The subjective deliberate indifference standard applies to both pretrial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment. *Hare*, 74 F.3d at 648. Deliberate indifference "'is an extremely high standard to meet.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless Plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat [Fortune], ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756).

"Deliberate indifference is more than mere negligence or even gross negligence. *Brown*

7

*v.*

*Callahan*, 623 F.3d 249, 255 (5th Cir. 2010).[6]  Negligent conduct by prison officials does not

rise to the level of a constitutional violation.  *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).

Specifically, negligent medical care does not constitute a valid Section 1983 claim. *Mendoza v.*

*Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).  The Plaintiff is not entitled to the "best" medical

treatment available.  *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978).  A misdiagnosis and

the resulting inadequate medical care do not violate the Constitution. *Irby v. Cole*, 2006 WL

2827551, *7 (S.D. Miss. Sept. 25, 2006); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th

Cir. 1999) (active treatment of prisoner's serious medical condition, which ultimately resulted in

death, does not constitute deliberate indifference, even if treatment was negligently

administered); *Garrett v. Univ. of Tex. Med. Branch*, 261 Fed. App'x. 759, 760 (5th Cir. 2008)

(finding no deliberate indifference despite alleged misdiagnosis and incorrect treatment because

plaintiff failed to prove the defendant intentionally treated him incorrectly).

<u>Nurse Skye Johnson</u>

Plaintiff alleges that Nurse Johnson denied Fortune adequate medical treatment when she

failed to properly treat Fortune's pneumonia and only treated him for a fever and a sore throat.

Plaintiff, however, has failed to show that Nurse Johnson was deliberately indifferent to

Fortune's serious medical needs. *See Davidson*, 91 Fed. App'x. at 964.  Based on the evidence

before the court, Nurse Johnson did not refuse to treat Fortune, ignore his complaints,

---

[6] Plaintiff cites *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999) for her argument that
"[g]ross negligence is the same as deliberate indifference and constitutes cruel and unusual
punishment." (Pl.'s Brief Opposing Summary Judgment [41] at 5.)  The court in *Harris*,
however, did not hold that deliberate indifference is the same as gross negligence.  Plaintiff's
reliance on *Harris* is misplaced.

intentionally treat him incorrectly, or otherwise deny him medical treatment. *See Domino*, 239

F.3d at 756.  To the contrary, Nurse Johnson examined Fortune on the same day he requested

medical care, took his vital signs, discussed Fortune's symptoms with a medical doctor, and

administered medication to Fortune. (Defs' Ex. M; Ex. N at 13, 16-17.)  There is no evidence

that Nurse Johnson knew Fortune had pneumonia or intentionally mistreated him.  Additionally,

Nurse Johnson had no knowledge of any medical problems suffered by Fortune after her

treatment on March 28, 2011.[7] (Defs' Ex. N at 18.)  Accordingly, there is no evidence to suggest

Nurse Johnson purposefully neglected Fortune's medical needs. *See Estate of Henson v. Krajca*,

440 Fed. App'x. 341, 344 (5th Cir. 2011).

      As Plaintiff points out, Nurse Johnson failed to listen to Fortune's chest, and such a

failure may well have led to a misdiagnosis regarding Fortune's pneumonia. (Defs' Ex. N at 15-

16.)  However, "[a] state actor's failure to alleviate a significant risk he should have perceived

but did not does not rise to the level of deliberate indifference." *Morris v. Dallas County*, ---F.

Supp. 2d---, 2013 WL 3014673, *10 (N.D. Tex. June 18, 2013) (citing *McClendon v. City of

Columbia*, 305 F.3d 314, 326 (5th Cir. 2002)).  Even if Nurse Johnson were negligent and/or

unsuccessful in her treatment of Fortune, this does not rise to the level of a constitutional

violation. *See Daniels*, 474 U.S. at 333-34;  *McMahon*, 583 F.2d at 174; *Davidson*, 91 Fed.

App'x at 965 (citing *Stewart*, 174 F.3d at 534) ("Unsuccessful medical treatment, ordinary acts

of negligence, or medical malpractice do not constitute a cause of action under § 1983.");

*Bennett v. Louisiana ex rel. Dep't of Public Safety and Corr.*, 2009 WL 102080, at *4 (5th Cir.

---

[7] In fact, after March 29, 2011, Nurse Johnson was off duty until after Fortune's death.
(Ex. N at 18.)

Jan. 15, 2009) (affirming dismissal of plaintiff's wrongful death claim against prison officials, reasoning "[w]hile the [officials] may very well have exercised poor medical judgment in not performing additional tests on [the deceased prisoner], [plaintiff] has not shown that their actions rise to the level of deliberate indifference"); *Henson*, 440 Fed. App'x at 346 ("If deliberate indifference could be inferred solely from [a] Nurse['s] failure to act in a manner consistent with her training, the standard applied would be more akin to negligence than deliberate indifference.")

Plaintiff also argues that the doctrine of *res ipsa loquitur* may be used to establish liability on the part of Nurse Johnson.  *Res ipsa loquitur*, however, cannot be used to prove deliberate indifference.[8]

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Nurse Johnson was deliberately indifferent to Fortune's serious medical needs. Accordingly, Nurse Johnson is entitled to judgment as a matter of law in both her individual and official capacity.

Deputy Sheriff Randall Smith

Plaintiff alleges that Deputy Smith denied Fortune adequate medical treatment when he failed to check on Fortune with sufficient frequency.  Plaintiff argues that had Deputy Smith made rounds more frequently, Fortune's death could have "possibly" been prevented.  Deputy Smith admitted that officers tried to make rounds "at least once an hour," but he "was doing

---

[8] *See Gast v. Singleton*, 402 F. Supp. 2d 794, 799-800 (S.D. Tex. 2005) ("Neither the Supreme Court nor the Fifth Circuit has ever held that *res ipsa loquitur* may serve as a basis for municipal liability under § 1983."); *Green v. Revel*, 2010 WL 597827, *6 (N.D. Tex. Feb. 19, 2010); *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); and *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010).

[rounds] about every two hours" on the night in question. (Defs' Ex. P at 8.)  Deputy Smith's admission that officers *tried* to make rounds every hour does not establish that the standard of care *required* him to make rounds every hour.  Moreover, even if that were the standard of care, Deputy Smith's breach of that standard amounted to mere negligence and did not rise to the level of deliberate indifference. *See Daniels*, 474 U.S. at 333-34.

An official only acts with deliberate indifference if he is *aware* of an excessive risk and disregards that risk. *Ramos v. Menifee*, 2008 WL 924951, *2 (W.D. La. March 5, 2008) (citing *Farmer*, 511 U.S. at 837).  There is no evidence that Deputy Smith was aware of a serious medical condition.  No orders were in place that required additional monitoring of Fortune. Deputy Smith spoke to Fortune hours before his medical emergency, and, according to Deputy Smith, Fortune did not appear to be ill or in any apparent distress. (Defs' Ex. P at 11-12.) Plaintiff offers no competent summary judgment evidence to challenge Deputy Smith's testimony in this regard.

Inmates made Deputy Smith aware of Fortune's medical emergency during his rounds at 12:45 a.m. (Defs' Ex. P at 12; Ex. Q.)  At that time, Deputy Smith did not refuse to treat Fortune, ignore his complaints, intentionally treat him incorrectly, or otherwise deny him medical treatment. *See Domino*, 239 F.3d at 756.  To the contrary, Deputy Smith requested an ambulance and, with the assistance of another inmate, carried Fortune to the first floor, so he could be retrieved by the ambulance. (Defs' Ex. P at 13-14; Ex. Q.)  "No liability exists . . . if an official reasonably responded to a known substantial risk, 'even if the harm was ultimately not averted.'" *Ramos*, 2008 WL 924951 at *2 (quoting *Farmer*, 511 U.S. at 844).  There is no evidence of a "subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).

11

Based on the foregoing, Plaintiff has failed to create a genuine issue of material fact as to whether Deputy Smith was deliberately indifferent to Fortune's serious medical needs. Accordingly, Deputy Smith is entitled to judgment as a matter of law in both his individual and official capacity.

Sheriff Billy McGee

Plaintiff does not allege that Sheriff McGee was present for or personally involved in the alleged constitutional violations.  Rather, Plaintiff alleges that Sheriff McGee denied Fortune adequate medical treatment by failing to establish protocol or training procedures for inmate medical emergencies.

Supervisory officials may not be held liable under Section 1983 for the actions of their subordinates under any theory of vicarious liability. *Thompkins*, 828 F.2d at 303.  To maintain a claim that Sheriff McGee failed to properly train or supervise, Plaintiff must prove that (1) Sheriff McGee failed to train or supervise the correctional officers, (2) a causal link exists between the failure to train or supervise and the alleged violation of Fortune's rights, and (3) the failure to train or supervise amounted to deliberate indifference. *Id*. at 459.

To maintain a claim that Sheriff McGee failed to establish an adequate policy, Plaintiff must show "(1) that the policy *itself* violated federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Forse*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bryan County*, 520 U.S. at 423).  It must be "obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) (quoting *Rhyne v. Henderson County*, 973 F.2d

386, 392 (5th Cir. 1992)).

The record demonstrates that Forrest County did, in fact, have an emergency medical response procedure in place at the time of Fortune's death, but Deputy Smith did not know about the procedure. (Defs' Reply Supporting Motion for Summary Judgment [45] Ex. AA: Forrest County Regional Jail Standard Operating Procedure.)  Even though Deputy Smith did not know about the emergency medical response procedure, Plaintiff failed to demonstrate a factual connection between Deputy Smith's actions during Fortune's medical emergency and any actual adverse consequences to Fortune.  Simply stated, no violation of Fortune's constitutional rights occurred as a result of any failure to establish protocol or training procedures for medical emergencies as, whatever the procedure might have been, Plaintiff has not shown that Deputy Smith improperly responded to Fortune's emergency medical needs.  Further, Plaintiff does not identify what else, if anything, Deputy Smith could or should have done once he became aware of Fortune's condition or that any such failure led to Fortune's death.

Even if it were assumed that Fortune experienced adverse consequences as a result of Sheriff McGee's failure to properly train, Plaintiff has not demonstrated deliberate indifference on the part of Sheriff McGee.  "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . ." *Estate of Davis ex rel. McCully v. City of N. Richlan Hills*, 406 F.3d 375, 379 (5th Cir. 2005).  "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459.  "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and

13

obviously likely to result in a constitutional violation." *Id*.  Similarly, demonstrating that a policy reflects deliberate indifference "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Johnson*, 379 F.3d at 309.

Plaintiff makes no attempt to demonstrate a pattern of Sheriff McGee's subordinates failing to properly respond to emergency medical situations.  "[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Without proof of prior incidents that demonstrate inadequate procedure or training, the record does not permit the inference that Sheriff McGee was deliberately indifferent.  Accordingly, Sheriff McGee is entitled to judgment as a matter of law in both his individual and official capacity.

Forrest County

Plaintiff's claims against Forrest County are derived from Plaintiff's claims against Nurse Johnson, Sheriff McGee, and Deputy Smith in their official capacities.  However, as stated above, there is no *respondeat superior* liability under Section 1983. *Oliver*, 276 F.3d at 742.  To maintain a claim against Forrest County, Plaintiff must present evidence that there was a policymaker, that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation. *Monell*, 436 U.S. at 694.

Plaintiff's only allegation relating to a custom or policy is Sheriff McGee's alleged failure to establish protocol or training procedures for inmate medical emergencies.  As discussed above, Plaintiff has failed to demonstrate that Forrest County (Sheriff McGee in his official capacity) implemented a policy, custom, or practice, with deliberate indifference, that

14

was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694. The record establishes an isolated, tragic incident not a pattern or practice for which Forrest County may be held liable.  Plaintiff has failed to raise a material fact issue regarding deliberate indifference.  Plaintiff's claims fail as a mater of law.

Forrest County raises the doctrine of qualified immunity as a defense.  Although the Court finds that Plaintiff's claims fail as a matter of law, it should be noted that the defense of qualified immunity is not available to governmental entities. *Owen*, 445 U.S. 622.

### *Qualified Immunity*

Although the individual Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Well v. Bonner*, 45 F.3d 90,93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999).  Because the Court finds that Plaintiff has failed to establish cognizable constitutional claims, it need not address the issue of whether the Defendants are entitled to qualified immunity

### **State Law Claims**

Plaintiff also asserts state law claims against Defendants.  The Mississippi Tort Claims Act provides a limited waiver of sovereign immunity for Mississippi and its political subdivisions. Miss. Code Ann. § 11-46-5.  However, there exists numerous exceptions to this waiver, including those in Mississippi Code § 11-46-9.  In pertinent part, § 11-46-9 provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . . .

(m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m).

This exception under the Mississippi Tort Claims Act applies to pretrial detainees. *Hunter v. Harris*, 2010 WL 3713444, *21 (S.D. Miss. Aug. 5, 2010) (citing *Harrison v. Greene County Sheriff Dep't*, 899 So. 2d 922 (Miss. App. 2005)). Also, the exception is applicable to wrongful death claims. *Phillips*, 311 F.3d at 375 (citing *Sparks v. Kim*, 701 So. 2d 1113, 1114 (Miss. 1997)). Defendants include a governmental entity (Forrest County)[9] and its employees acting within the course and scope of their employment.[10] Fortune was detained in the jail at the time the claims in this mater arose. *See* Miss. Code. Ann. § 11-46-9(1)(m). Accordingly, Plaintiff's state law claims against Defendants are barred.

## Motion to Re-Open Discovery

In Plaintiff's Motion to Re-Open Discovery, Plaintiff seeks leave from the Court to designate an expert witness well after the deadline to designate expert witnesses, after discovery has concluded, and after Defendants have moved for summary judgment. In considering this Motion, the Court considers four factors: "'(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" *State Indus. Products Corp v.*

---

[9] A county is defined as a governmental entity under the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-1(g) & (i).

[10] Plaintiff does not dispute that the individual Defendants were acting within the course and scope of their employment. In fact, Plaintiff offered no response to Defendants' argument that the Mississippi Tort Claims Act bars Plaintiff's state law claims.

*Beta Tecnology, Inc.*, 2008 WL 2230197, *3 (S.D. Miss. May 28, 2008) (quoting *Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004)).  All of these factors weigh in favor of denying Plaintiff's Motion, particularly the importance of the testimony.[11]

    Plaintiff seeks to use expert testimony to establish the standard of care for Nurse Johnson and establish that Nurse Johnson breached the standard of care.  However, Nurse Johnson's actions/inactions do not establish deliberate indifference, which "exists wholly independent of an optimal standard of care." *Estate of Henson v. Krajca*, 440 Fed. Appx. 341, 344 (5th Cir. 2011) (quoting *Gobert*, 463 F.3d at 349).  Expert testimony cannot create a fact question regarding what Nurse Johnson actually knew. *Gobert*, 463 F.3d at 348.  The issue of whether a defendant acted with deliberate indifference is a legal conclusion. *Davis v. Burks*, 98 F.3d 1338, 1996 WL 556791, *2 (5th Cir. 1996).  There is nothing in the record that would support a finding that Nurse Johnson *knew* of and disregarded an excessive risk to Fortune's health. *See Farmer*, 511 U.S. at 838.  Additional expert testimony regarding the standard of care would not create a genuine issue of material fact.[12]

                                        **CONCLUSION**

    For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment [35] should be granted and Plaintiff's Motion to Re-Open Discovery [47] should be

---

[11] Plaintiff states that she is seeking this relief pursuant to Federal Rule of Civil Procedure 56(f) (renumbered Rule 56(d)). (Pl.'s Reply Supporting Motion [49].)  Plaintiff would not be entitled to relief under Rule 56(d) because Plaintiff's request did not meet the requirements of the rule and the evidence sought would not create a genuine issue of material fact. *See Liquid Drill, Inc. V. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 930 (5th Cir. 1995).

[12] The other factors also weigh against Plaintiff who offers no apparent basis for failing to designate an expert in a timely manner.  More importantly, Plaintiff does not explain how the testimony would create an issue of fact as to deliberate indifference.

denied.  Accordingly,

IT IS THEREFORE, ORDERED:

1.  That Defendants' Motion for Summary Judgment is GRANTED and that this action is dismissed with prejudice.

2.  That Plaintiff's Motion to Re-Open Discovery is DENIED.

4.  A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED

THIS, the 6th day of September, 2013.

s/ Michael T. Parker
United States Magistrate Judge